# HELICOPTEROS NACIONALES DE COLOMBIA, S. A. *v.* HALL ET AL.

No. 82–1127.   Argued November 8, 1983—Decided April 24, 1984

BLACKMUN, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, MARSHALL, POWELL, REHNQUIST, STEVENS, and O'CONNOR, JJ., joined. BRENNAN, J., filed a dissenting opinion, *post*, p. 419.

*Thomas J. Whalen* argued the cause for petitioner. With him on the briefs were *Austin P. Magner, Cynthia J. Larsen, James E. Ingram*, and *Barry A. Chasnoff.*

*George E. Pletcher* argued the cause and filed a brief for respondents.*

JUSTICE BLACKMUN delivered the opinion of the Court.

We granted certiorari in this case, 460 U. S. 1021 (1983), to decide whether the Supreme Court of Texas correctly ruled that the contacts of a foreign corporation with the State of Texas were sufficient to allow a Texas state court to assert jurisdiction over the corporation in a cause of action not arising out of or related to the corporation's activities within the State.

I

Petitioner Helicopteros Nacionales de Colombia, S. A. (Helicol), is a Colombian corporation with its principal place of business in the city of Bogota in that country. It is engaged in the business of providing helicopter transportation for oil and construction companies in South America. On

---

*Robert L. Stern, Stephen M. Shapiro, William H. Crabtree,* and *Edward P. Good* filed a brief for the Motor Vehicle Manufacturers Association as *amicus curiae* urging reversal.

*Solicitor General Lee, Assistant Attorney General McGrath, Deputy Solicitor General Geller, Kathryn A. Oberly, Michael F. Hertz,* and *Howard S. Scher* filed a brief for the United States as *amicus curiae.*

January 26, 1976, a helicopter owned by Helicol crashed in Peru. Four United States citizens were among those who lost their lives in the accident. Respondents are the survivors and representatives of the four decedents.

At the time of the crash, respondents' decedents were employed by Consorcio, a Peruvian consortium, and were working on a pipeline in Peru. Consorcio is the alter ego of a joint venture named Williams-Sedco-Horn (WSH).[1] The venture had its headquarters in Houston, Tex. Consorcio had been formed to enable the venturers to enter into a contract with Petro Peru, the Peruvian state-owned oil company. Consorcio was to construct a pipeline for Petro Peru running from the interior of Peru westward to the Pacific Ocean. Peruvian law forbade construction of the pipeline by any non-Peruvian entity.

Consorcio/WSH[2] needed helicopters to move personnel, materials, and equipment into and out of the construction area. In 1974, upon request of Consorcio/WSH, the chief executive officer of Helicol, Francisco Restrepo, flew to the United States and conferred in Houston with representatives of the three joint venturers. At that meeting, there was a discussion of prices, availability, working conditions, fuel, supplies, and housing. Restrepo represented that Helicol could have the first helicopter on the job in 15 days. The Consorcio/WSH representatives decided to accept the contract proposed by Restrepo. Helicol began performing before the agreement was formally signed in Peru on November 11, 1974.[3] The contract was written in Spanish on

---

[1] The participants in the joint venture were Williams International Sudamericana, Ltd., a Delaware corporation; Sedco Construction Corporation, a Texas corporation; and Horn International, Inc., a Texas corporation.

[2] Throughout the record in this case the entity is referred to both as Consorcio and as WSH. We refer to it hereinafter as Consorcio/WSH.

[3] Respondents acknowledge that the contract was executed in Peru and not in the United States. Tr. of Oral Arg. 22–23. See App. 79a; Brief for Respondents 3.

official government stationery and provided that the residence of all the parties would be Lima, Peru. It further stated that controversies arising out of the contract would be submitted to the jurisdiction of Peruvian courts. In addition, it provided that Consorcio/WSH would make payments to Helicol's account with the Bank of America in New York City. App. 12a.

Aside from the negotiation session in Houston between Restrepo and the representatives of Consorcio/WSH, Helicol had other contacts with Texas. During the years 1970–1977, it purchased helicopters (approximately 80% of its fleet), spare parts, and accessories for more than $4 million from Bell Helicopter Company in Fort Worth. In that period, Helicol sent prospective pilots to Fort Worth for training and to ferry the aircraft to South America. It also sent management and maintenance personnel to visit Bell Helicopter in Fort Worth during the same period in order to receive "plant familiarization" and for technical consultation. Helicol received into its New York City and Panama City, Fla., bank accounts over $5 million in payments from Consorcio/WSH drawn upon First City National Bank of Houston.

Beyond the foregoing, there have been no other business contacts between Helicol and the State of Texas. Helicol never has been authorized to do business in Texas and never has had an agent for the service of process within the State. It never has performed helicopter operations in Texas or sold any product that reached Texas, never solicited business in Texas, never signed any contract in Texas, never had any employee based there, and never recruited an employee in Texas. In addition, Helicol never has owned real or personal property in Texas and never has maintained an office or establishment there. Helicol has maintained no records in Texas and has no shareholders in that State.[4] None of the

---

[4] The Colombian national airline, Aerovias Nacionales de Colombia, owns approximately 94% of Helicol's capital stock. The remainder is held

respondents or their decedents were domiciled in Texas, Tr. of Oral Arg. 17, 18,[5] but all of the decedents were hired in Houston by Consorcio/WSH to work on the Petro Peru pipeline project.

Respondents instituted wrongful-death actions in the District Court of Harris County, Tex., against Consorcio/WSH, Bell Helicopter Company, and Helicol. Helicol filed special appearances and moved to dismiss the actions for lack of *in personam* jurisdiction over it. The motion was denied. After a consolidated jury trial, judgment was entered against Helicol on a jury verdict of $1,141,200 in favor of respondents.[6] App. 174a.

The Texas Court of Civil Appeals, Houston, First District, reversed the judgment of the District Court, holding that *in personam* jurisdiction over Helicol was lacking. 616 S. W. 2d 247 (1981). The Supreme Court of Texas, with three justices dissenting, initially affirmed the judgment of the Court of Civil Appeals. App. to Pet. for Cert. 46a–62a. Seven months later, however, on motion for rehearing, the court withdrew its prior opinions and, again with three justices dissenting, reversed the judgment of the intermediate court. 638 S. W. 2d 870 (1982). In ruling that the Texas courts had

---

by Aerovias Corporacion de Viajes and four South American individuals. See Brief for Petitioner 2, n. 2.

[5] Respondents' lack of residential or other contacts with Texas of itself does not defeat otherwise proper jurisdiction. *Keeton* v. *Hustler Magazine, Inc.,* 465 U. S. 770, 780 (1984); *Calder* v. *Jones,* 465 U. S. 783, 788 (1984). We mention respondents' lack of contacts merely to show that nothing in the nature of the relationship between respondents and Helicol could possibly enhance Helicol's contacts with Texas. The harm suffered by respondents did not occur in Texas. Nor is it alleged that any negligence on the part of Helicol took place in Texas.

[6] Defendants Consorcio/WSH and Bell Helicopter Company were granted directed verdicts with respect to respondents' claims against them. Bell Helicopter was granted a directed verdict on Helicol's cross-claim against it. App. 167a. Consorcio/WSH, as cross-plaintiff in a claim against Helicol, obtained a judgment in the amount of $70,000. *Id.,* at 174a.

*in personam* jurisdiction, the Texas Supreme Court first held that the State's long-arm statute reaches as far as the Due Process Clause of the Fourteenth Amendment permits. *Id.*, at 872.[7] Thus, the only question remaining for the court to decide was whether it was consistent with the Due Process Clause for Texas courts to assert *in personam* jurisdiction over Helicol. *Ibid.*

## II

The Due Process Clause of the Fourteenth Amendment operates to limit the power of a State to assert *in personam*

---

[7] The State's long-arm statute is Tex. Rev. Civ. Stat. Ann., Art. 2031b (Vernon 1964 and Supp. 1982–1983). It reads in relevant part:

"Sec. 3. Any foreign corporation . . . that engages in business in this State, irrespective of any Statute or law respecting designation or maintenance of resident agents, and does not maintain a place of regular business in this State or a designated agent upon whom service may be made upon causes of action arising out of such business done in this State, the act or acts of engaging in such business within this State shall be deemed equivalent to an appointment by such foreign corporation . . . of the Secretary of State of Texas as agent upon whom service of process may be made in any action, suit or proceedings arising out of such business done in this State, wherein such corporation . . . is a party or is to be made a party.

"Sec. 4. For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation . . . shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State. The act of recruiting Texas residents, directly or through an intermediary located in Texas, for employment inside or outside of Texas shall be deemed doing business in this State."

The last sentence of § 4 was added by 1979 Tex. Gen. Laws, ch. 245, § 1, and became effective August 27, 1979.

The Supreme Court of Texas in its principal opinion relied upon rulings in *U-Anchor Advertising, Inc.* v. *Burt*, 553 S. W. 2d 760 (Tex. 1977); *Hoppenfeld* v. *Crook*, 498 S. W. 2d 52 (Tex. Civ. App. 1973); and *O'Brien* v. *Lanpar Co.*, 399 S. W. 2d 340 (Tex. 1966). It is not within our province, of course, to determine whether the Texas Supreme Court correctly interpreted the State's long-arm statute. We therefore accept that court's holding that the limits of the Texas statute are coextensive with those of the Due Process Clause.

jurisdiction over a nonresident defendant. *Pennoyer* v. *Neff*, 95 U. S. 714 (1878). Due process requirements are satisfied when *in personam* jurisdiction is asserted over a nonresident corporate defendant that has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co.* v. *Washington*, 326 U. S. 310, 316 (1945), quoting *Milliken* v. *Meyer*, 311 U. S. 457, 463 (1940). When a controversy is related to or "arises out of" a defendant's contacts with the forum, the Court has said that a "relationship among the defendant, the forum, and the litigation" is the essential foundation of *in personam* jurisdiction. *Shaffer* v. *Heitner*, 433 U. S. 186, 204 (1977).[8]

Even when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State,[9] due process is not offended by a State's subjecting the corporation to its *in personam* jurisdiction when there are sufficient contacts between the State and the foreign corporation. *Perkins* v. *Benguet Consolidated Mining Co.*, 342 U. S. 437 (1952); see *Keeton* v. *Hustler Magazine, Inc.*, 465 U. S. 770, 779–780 (1984). In *Perkins*, the Court addressed a situation in which state courts had asserted general jurisdiction over a defendant foreign corporation. During the Japa-

---

[8] It has been said that when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising "specific jurisdiction" over the defendant. See Von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L. Rev. 1121, 1144–1164 (1966).

[9] When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising "general jurisdiction" over the defendant. See Brilmayer, How Contacts Count: Due Process Limitations on State Court Jurisdiction, 1980 S. Ct. Rev. 77, 80–81; Von Mehren & Trautman, 79 Harv. L. Rev., at 1136–1144; *Calder* v. *Jones*, 465 U. S., at 786.

nese occupation of the Philippine Islands, the president and general manager of a Philippine mining corporation maintained an office in Ohio from which he conducted activities on behalf of the company. He kept company files and held directors' meetings in the office, carried on correspondence relating to the business, distributed salary checks drawn on two active Ohio bank accounts, engaged an Ohio bank to act as transfer agent, and supervised policies dealing with the rehabilitation of the corporation's properties in the Philippines. In short, the foreign corporation, through its president, "ha[d] been carrying on in Ohio a continuous and systematic, but limited, part of its general business," and the exercise of general jurisdiction over the Philippine corporation by an Ohio court was "reasonable and just." 342 U. S., at 438, 445.

All parties to the present case concede that respondents' claims against Helicol did not "arise out of," and are not related to, Helicol's activities within Texas.[10] We thus must

---

[10] See Brief for Respondents 14; Tr. of Oral Arg. 26–27, 30–31. Because the parties have not argued any relationship between the cause of action and Helicol's contacts with the State of Texas, we, contrary to the dissent's implication, *post*, at 419–420, assert no "view" with respect to that issue.

The dissent suggests that we have erred in drawing no distinction between controversies that "relate to" a defendant's contacts with a forum and those that "arise out of" such contacts. *Post*, at 420. This criticism is somewhat puzzling, for the dissent goes on to urge that, for purposes of determining the constitutional validity of an assertion of specific jurisdiction, there really should be no distinction between the two. *Post*, at 427–428.

We do not address the validity or consequences of such a distinction because the issue has not been presented in this case. Respondents have made no argument that their cause of action either arose out of or is related to Helicol's contacts with the State of Texas. Absent any briefing on the issue, we decline to reach the questions (1) whether the terms "arising out of" and "related to" describe different connections between a cause of action and a defendant's contacts with a forum, and (2) what sort of tie between a cause of action and a defendant's contacts with a forum is necessary to a determination that either connection exists. Nor do we reach the

explore the nature of Helicol's contacts with the State of Texas to determine whether they constitute the kind of continuous and systematic general business contacts the Court found to exist in *Perkins*. We hold that they do not.

It is undisputed that Helicol does not have a place of business in Texas and never has been licensed to do business in the State. Basically, Helicol's contacts with Texas consisted of sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from Bell Helicopter for substantial sums; and sending personnel to Bell's facilities in Fort Worth for training.

The one trip to Houston by Helicol's chief executive officer for the purpose of negotiating the transportation-services contract with Consorcio/WSH cannot be described or regarded as a contact of a "continuous and systematic" nature, as *Perkins* described it, see also *International Shoe Co.* v. *Washington*, 326 U. S., at 320, and thus cannot support an assertion of *in personam* jurisdiction over Helicol by a Texas court. Similarly, Helicol's acceptance from Consorcio/WSH of checks drawn on a Texas bank is of negligible significance for purposes of determining whether Helicol had sufficient contacts in Texas. There is no indication that Helicol ever requested that the checks be drawn on a Texas bank or that there was any negotiation between Helicol and Consorcio/WSH with respect to the location or identity of the bank on which checks would be drawn. Common sense and everyday experience suggest that, absent unusual circumstances,[11] the bank on which a check is drawn is generally of little

---

question whether, if the two types of relationship differ, a forum's exercise of personal jurisdiction in a situation where the cause of action "relates to," but does not "arise out of," the defendant's contacts with the forum should be analyzed as an assertion of specific jurisdiction.

[11] For example, if the financial health and continued ability of the bank to honor the draft are questionable, the payee might request that the check be drawn on an account at some other institution.

consequence to the payee and is a matter left to the discretion of the drawer. Such unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction. See *Kulko* v. *California Superior Court*, 436 U. S. 84, 93 (1978) (arbitrary to subject one parent to suit in any State where other parent chooses to spend time while having custody of child pursuant to separation agreement); *Hanson* v. *Denckla*, 357 U. S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State"); see also Lilly, Jurisdiction Over Domestic and Alien Defendants, 69 Va. L. Rev. 85, 99 (1983).

The Texas Supreme Court focused on the purchases and the related training trips in finding contacts sufficient to support an assertion of jurisdiction. We do not agree with that assessment, for the Court's opinion in *Rosenberg Bros. & Co.* v. *Curtis Brown Co.*, 260 U. S. 516 (1923) (Brandeis, J., for a unanimous tribunal), makes clear that purchases and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction.

The defendant in *Rosenberg* was a small retailer in Tulsa, Okla., who dealt in men's clothing and furnishings. It never had applied for a license to do business in New York, nor had it at any time authorized suit to be brought against it there. It never had an established place of business in New York and never regularly carried on business in that State. Its only connection with New York was that it purchased from New York wholesalers a large portion of the merchandise sold in its Tulsa store. The purchases sometimes were made by correspondence and sometimes through visits to New York by an officer of the defendant. The Court concluded: "Visits on such business, even if occurring at regular intervals, would not warrant the inference that the corporation was present within the jurisdiction of [New York]." *Id.*, at 518.

This Court in *International Shoe* acknowledged and did not repudiate its holding in *Rosenberg*. See 326 U. S., at 318. In accordance with *Rosenberg*, we hold that mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions.[12] Nor can we conclude that the fact that Helicol sent personnel into Texas for training in connection with the purchase of helicopters and equipment in that State in any way enhanced the nature of Helicol's contacts with Texas. The training was a part of the package of goods and services purchased by Helicol from Bell Helicopter. The brief presence of Helicol employees in Texas for the purpose of attending the training sessions is no more a significant contact than were the trips to New York made by the buyer for the retail store in *Rosenberg*. See also *Kulko v. California Superior Court*, 436 U. S., at 93 (basing California jurisdiction on 3-day and 1-day stopovers in that State "would make a mockery of" due process limitations on assertion of personal jurisdiction).

### III

We hold that Helicol's contacts with the State of Texas were insufficient to satisfy the requirements of the Due Proc-

---

[12] This Court in *International Shoe* cited *Rosenberg* for the proposition that "the commission of some single or occasional acts of the corporate agent in a state sufficient to impose an obligation or liability on the corporation has not been thought to confer upon the state authority to enforce it." 326 U. S., at 318. Arguably, therefore, *Rosenberg* also stands for the proposition that mere purchases are not a sufficient basis for either general or specific jurisdiction. Because the case before us is one in which there has been an assertion of general jurisdiction over a foreign defendant, we need not decide the continuing validity of *Rosenberg* with respect to an assertion of specific jurisdiction, *i. e.*, where the cause of action arises out of or relates to the purchases by the defendant in the forum State.

ess Clause of the Fourteenth Amendment.[13]   Accordingly, we reverse the judgment of the Supreme Court of Texas.

*It is so ordered.*

JUSTICE BRENNAN, dissenting.

Decisions applying the Due Process Clause of the Fourteenth Amendment to determine whether a State may constitutionally assert *in personam* jurisdiction over a particular defendant for a particular cause of action most often turn on a weighing of facts.   See, *e. g.*, *Kulko* v. *California Superior Court*, 436 U. S. 84, 92 (1978); *id.*, at 101–102 (BRENNAN, J., dissenting).   To a large extent, today's decision follows the usual pattern.   Based on essentially undisputed facts, the Court concludes that petitioner Helicol's contacts with the State of Texas were insufficient to allow the Texas state courts constitutionally to assert "general jurisdiction" over all claims filed against this foreign corporation.   Although my independent weighing of the facts leads me to a different conclusion, see *infra*, at 423–424, the Court's holding on this issue is neither implausible nor unexpected.

What is troubling about the Court's opinion, however, are the implications that might be drawn from the way in which the Court approaches the constitutional issue it addresses. First, the Court limits its discussion to an assertion of general jurisdiction of the Texas courts because, in its view, the

[13] As an alternative to traditional minimum-contacts analysis, respondents suggest that the Court hold that the State of Texas had personal jurisdiction over Helicol under a doctrine of "jurisdiction by necessity."   See *Shaffer* v. *Heitner*, 433 U. S. 186, 211, n. 37   (1977).   We conclude, however, that respondents failed to carry their burden of showing that all three defendants could not be sued together in a single forum.   It is not clear from the record, for example, whether suit could have been brought against all three defendants in either Colombia or Peru.   We decline to consider adoption of a doctrine of jurisdiction by necessity—a potentially far-reaching modification of existing law—in the absence of a more complete record.

underlying cause of action does "not aris[e] out of or relat[e] to the corporation's activities within the State." *Ante,* at 409. Then, the Court relies on a 1923 decision in *Rosenberg Bros. & Co.* v. *Curtis Brown Co.,* 260 U. S. 516, without considering whether that case retains any validity after our more recent pronouncements concerning the permissible reach of a State's jurisdiction. By posing and deciding the question presented in this manner, I fear that the Court is saying more than it realizes about constitutional limitations on the potential reach of *in personam* jurisdiction. In particular, by relying on a precedent whose premises have long been discarded, and by refusing to consider any distinction between controversies that "relate to" a defendant's contacts with the forum and causes of action that "arise out of" such contacts, the Court may be placing severe limitations on the type and amount of contacts that will satisfy the constitutional minimum.

In contrast, I believe that the undisputed contacts in this case between petitioner Helicol and the State of Texas are sufficiently important, and sufficiently related to the underlying cause of action, to make it fair and reasonable for the State to assert personal jurisdiction over Helicol for the wrongful-death actions filed by the respondents. Given that Helicol has purposefully availed itself of the benefits and obligations of the forum, and given the direct relationship between the underlying cause of action and Helicol's contacts with the forum, maintenance of this suit in the Texas courts "does not offend [the] 'traditional notions of fair play and substantial justice,'" *International Shoe Co.* v. *Washington,* 326 U. S. 310, 316 (1945) (quoting *Milliken* v. *Meyer,* 311 U. S. 457, 463 (1940)), that are the touchstone of jurisdictional analysis under the Due Process Clause. I therefore dissent.

I

The Court expressly limits its decision in this case to "an assertion of general jurisdiction over a foreign defendant."

*Ante,* at 418, n. 12.    See *ante,* at 415, and n. 10.    Having framed the question in this way, the Court is obliged to address our prior holdings in *Perkins* v. *Benguet Consolidated Mining Co.,* 342 U. S. 437 (1952), and *Rosenberg Bros. & Co.* v. *Curtis Brown Co., supra.*    In *Perkins,* the Court considered a State's assertion of general jurisdiction over a foreign corporation that "ha[d] been carrying on . . . a continuous and systematic, but limited, part of its general business" in the forum.    342 U. S., at 438.    Under the circumstances of that case, we held that such contacts were constitutionally sufficient "to make it reasonable and just to subject the corporation to the jurisdiction" of that State.    *Id.,* at 445 (citing *International Shoe, supra,* at 317–320).    Nothing in *Perkins* suggests, however, that such "continuous and systematic" contacts are a necessary minimum before a State may constitutionally assert general jurisdiction over a foreign corporation.

The Court therefore looks for guidance to our 1923 decision in *Rosenberg, supra,* which until today was of dubious validity given the subsequent expansion of personal jurisdiction that began with *International Shoe, supra,* in 1945.    In *Rosenberg,* the Court held that a company's purchases within a State, even when combined with related trips to the State by company officials, would not allow the courts of that State to assert general jurisdiction over all claims against the nonresident corporate defendant making those purchases.[1]

---

[1] The Court leaves open the question whether the decision in *Rosenberg* was intended to address any constitutional limits on an assertion of "specific jurisdiction."    *Ante,* at 418, n. 12 (citing *International Shoe,* 326 U. S., at 318).    If anything is clear from Justice Brandeis' opinion for the Court in *Rosenberg,* however, it is that the Court was concerned only with general jurisdiction over the corporate defendant.    See 260 U. S., at 517 ("The sole question for decision is whether . . . defendant was doing business within the State of New York in such manner and to such extent as to warrant the inference that it was present there"); *id.,* at 518 (the corporation's contacts with the forum "would not warrant the inference that the corporation was present within the jurisdiction of the State"); *ante,* at 417.    The

Reasoning by analogy, the Court in this case concludes that Helicol's contacts with the State of Texas are no more significant than the purchases made by the defendant in *Rosenberg*. The Court makes no attempt, however, to ascertain whether the narrow view of *in personam* jurisdiction adopted by the Court in *Rosenberg* comports with "the fundamental transformation of our national economy" that has occurred since 1923. *McGee* v. *International Life Ins. Co.*, 355 U. S. 220, 222–223 (1957). See also *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U. S. 286, 292–293 (1980); *id.*, at 308–309 (BRENNAN, J., dissenting); *Hanson* v. *Denckla*, 357 U. S. 235, 250–251 (1958); *id.*, at 260 (Black, J., dissenting). This failure, in my view, is fatal to the Court's analysis.

The vast expansion of our national economy during the past several decades has provided the primary rationale for expanding the permissible reach of a State's jurisdiction under the Due Process Clause. By broadening the type and amount of business opportunities available to participants in interstate and foreign commerce, our economy has increased the frequency with which foreign corporations actively pursue commercial transactions throughout the various States. In turn, it has become both necessary and, in my view, desirable to allow the States more leeway in bringing the activities of these nonresident corporations within the scope of their respective jurisdictions.

This is neither a unique nor a novel idea. As the Court first noted in 1957:

> "[M]any commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the

Court's resuscitation of *Rosenberg*, therefore, should have no bearing upon any forum's assertion of jurisidiction over claims that arise out of or relate to a defendant's contacts with the State.

same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *McGee, supra,* at 222–223.

See also *World-Wide Volkswagen, supra,* at 293 (reaffirming that "[t]he historical developments noted in *McGee* . . . have only accelerated in the generation since that case was decided"); *Hanson* v. *Denckla, supra,* at 250–251.

Moreover, this "trend . . . toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents," *McGee, supra,* at 222, is entirely consistent with the "traditional notions of fair play and substantial justice," *International Shoe,* 326 U. S., at 316, that control our inquiry under the Due Process Clause. As active participants in interstate and foreign commerce take advantage of the economic benefits and opportunities offered by the various States, it is only fair and reasonable to subject them to the obligations that may be imposed by those jurisdictions. And chief among the obligations that a nonresident corporation should expect to fulfill is amenability to suit in any forum that is significantly affected by the corporation's commercial activities.

As a foreign corporation that has actively and purposefully engaged in numerous and frequent commercial transactions in the State of Texas, Helicol clearly falls within the category of nonresident defendants that may be subject to that forum's general jurisdiction. Helicol not only purchased helicopters and other equipment in the State for many years, but also sent pilots and management personnel into Texas to be trained in the use of this equipment and to consult with the seller on technical matters.[2] Moreover, negotiations for the

---

[2] Although the Court takes note of these contacts, it concludes that they did not "enhanc[e] the nature of Helicol's contacts with Texas [because the] training was a part of the package of goods and services purchased by Helicol." *Ante,* at 418. Presumably, the Court's statement simply recog-

contract under which Helicol provided transportation services to the joint venture that employed the respondents' decedents also took place in the State of Texas. Taken together, these contacts demonstrate that Helicol obtained numerous benefits from its transaction of business in Texas. In turn, it is eminently fair and reasonable to expect Helicol to face the obligations that attach to its participation in such commercial transactions. Accordingly, on the basis of continuous commercial contacts with the forum, I would conclude that the Due Process Clause allows the State of Texas to assert general jurisdiction over petitioner Helicol.

## II

The Court also fails to distinguish the legal principles that controlled our prior decisions in *Perkins* and *Rosenberg*. In particular, the contacts between petitioner Helicol and the State of Texas, unlike the contacts between the defendant and the forum in each of those cases, are significantly related to the cause of action alleged in the original suit filed by the respondents. Accordingly, in my view, it is both fair and reasonable for the Texas courts to assert specific jurisidiction over Helicol in this case.

By asserting that the present case does not implicate the specific jurisdiction of the Texas courts, see *ante*, at 415, and nn. 10 and 12, the Court necessarily removes its decision

---

nizes that participation in today's interdependent markets often necessitates the use of complicated purchase contracts that provide for numerous contacts between representatives of the buyer and seller, as well as training for related personnel. Ironically, however, while relying on these modern-day realities to denigrate the significance of Helicol's contacts with the forum, the Court refuses to acknowledge that these same realities require a concomitant expansion in a forum's jurisdictional reach. See *supra*, at 421–423. As a result, when deciding that the balance in this case must be struck against jurisdiction, the Court loses sight of the ultimate inquiry: whether it is fair and reasonable to subject a nonresident corporate defendant to the jurisdiction of a State when that defendant has purposefully availed itself of the benefits and obligations of that particular forum. Cf. *Hanson* v. *Denckla,* 357 U. S. 235, 253 (1958).

from the reality of the actual facts presented for our consideration.[3]   Moreover, the Court refuses to consider any distinction between contacts that are "related to" the underlying cause of action and contacts that "give rise" to the underlying cause of action.   In my view, however, there is a substantial difference between these two standards for asserting specific jurisdiction.   Thus, although I agree that the respondents' cause of action did not formally "arise out of" specific activities initiated by Helicol in the State of Texas, I believe that the wrongful-death claim filed by the respondents is significantly related to the undisputed contacts between Helicol and the forum.   On that basis, I would conclude that the Due Process Clause allows the Texas courts to assert specific jurisdiction over this particular action.

The wrongful-death actions filed by the respondents were premised on a fatal helicopter crash that occurred in Peru. Helicol was joined as a defendant in the lawsuits because it provided transportation services, including the particular helicopter and pilot involved in the crash, to the joint venture

---

[3] Nor do I agree with the Court that the respondents have conceded that their claims are not related to Helicol's activities within the State of Texas.   Although parts of their written and oral arguments before the Court proceed on the assumption that no such relationship exists, other portions suggest just the opposite:

"If it is the concern of the Solicitor General [appearing for the United States as *amicus curiae*] that a holding for Respondents here will cause foreign companies to refrain from purchasing in the United States for fear of exposure to general jurisdiction on unrelated causes of action, such concern is not well founded.

"Respondents' cause is not dependent on a ruling that mere purchases in a state, together with incidental training for operating and maintaining the merchandise purchased can constitute the ties, contacts and relations necessary to justify jurisdiction over an unrelated cause of action.   However, regular purchases and training coupled with other contacts, ties and relations may form the basis for jurisdiction."   Brief for Respondents 13–14.

Thus, while the respondents' position before this Court is admittedly less than clear, I believe it is preferable to address the specific jurisdiction of the Texas courts because Helicol's contacts with Texas are in fact related to the underlying cause of action.

that employed the decedents. Specifically, the respondent Hall claimed in her original complaint that "Helicol is . . . legally responsible for its own negligence through its pilot employee." App. 6a. Viewed in light of these allegations, the contacts between Helicol and the State of Texas are directly and significantly related to the underlying claim filed by the respondents. The negotiations that took place in Texas led to the contract in which Helicol agreed to provide the precise transportation services that were being used at the time of the crash. Moreover, the helicopter involved in the crash was purchased by Helicol in Texas, and the pilot whose negligence was alleged to have caused the crash was actually trained in Texas. See Tr. Of Oral Arg. 5, 22. This is simply not a case, therefore, in which a state court has asserted jurisdiction over a nonresident defendant on the basis of wholly unrelated contacts with the forum. Rather, the contacts between Helicol and the forum are directly related to the negligence that was alleged in the respondent Hall's original complaint.[4] Because Helicol should have expected to be amenable to suit in the Texas courts for claims directly related to these contacts, it is fair and reasonable to allow the assertion of jurisdiction in this case.

Despite this substantial relationship between the contacts and the cause of action, the Court declines to consider whether the courts of Texas may assert specific jurisdiction over this suit. Apparently, this simply reflects a narrow interpretation of the question presented for review. See *ante,* at 415–416, n. 10. It is nonetheless possible that the Court's opinion may be read to imply that the specific jurisdiction of the Texas courts is inapplicable because the cause of action

---

[4] The jury specifically found that "the pilot failed to keep the helicopter under proper control," that "the helicopter was flown into a treetop fog condition, whereby the vision of the pilot was impaired," that "such flying was negligence," and that "such negligence . . . was a proximate cause of the crash." See App. 167a–168a. On the basis of these findings, Helicol was ordered to pay over $1 million in damages to the respondents.

did not formally "arise out of" the contacts between Helicol and the forum. In my view, however, such a rule would place unjustifiable limits on the bases under which Texas may assert its jurisdictional power.[5]

Limiting the specific jurisdiction of a forum to cases in which the cause of action formally arose out of the defendant's contacts with the State would subject constitutional standards under the Due Process Clause to the vagaries of the substantive law or pleading requirements of each State. For example, the complaint filed against Helicol in this case alleged negligence based on pilot error. Even though the pilot was trained in Texas, the Court assumes that the Texas courts may not assert jurisdiction over the suit because the cause of action "did not 'arise out of,' and [is] not related to," that training. See *ante*, at 415. If, however, the applicable substantive law required that negligent training of the pilot was a necessary element of a cause of action for pilot error, or if the respondents had simply added an allegation of negligence in the training provided for the Helicol pilot, then presumably the Court would concede that the specific jurisdiction of the Texas courts was applicable.

Our interpretation of the Due Process Clause has never been so dependent upon the applicable substantive law or the State's formal pleading requirements. At least since *International Shoe Co.* v. *Washington*, 326 U. S. 310 (1945), the principal focus when determining whether a forum may constitutionally assert jurisdiction over a nonresident defendant has been on fairness and reasonableness to the defendant. To this extent, a court's specific jurisdiction should be applicable whenever the cause of action arises out of *or* relates to the contacts between the defendant and the forum. It is em-

---

[5] Compare Von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L. Rev. 1121, 1144–1163 (1966), with Brilmayer, How Contacts Count: Due Process Limitations on State Court Jurisdiction, 1980 S. Ct. Rev. 77, 80–88. See also Lilly, Jurisdiction Over Domestic and Alien Defendants, 69 Va. L. Rev. 85, 100–101, and n. 66 (1983).

inently fair and reasonable, in my view, to subject a defendant to suit in a forum with which it has significant contacts directly related to the underlying cause of action. Because Helicol's contacts with the State of Texas meet this standard, I would affirm the judgment of the Supreme Court of Texas.